IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| SHAFQAT KHAN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 1:20CV977 |
| | ) | |
| UNC HEALTH CARE SYSTEM, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

LORETTA C. BIGGS, District Judge.

Plaintiff, Shafqat Khan ("Khan"), initiated this action on October 29, 2020, against Defendant, UNC Health Care System ("UNC Health"), alleging discriminatory employment practices under Title VII of the Civil Rights Act of 1964 ("Title VII"), the American with Disabilities Act of 1990 ("ADA"), and the Family Medical Leave Act of 1993 ("FMLA"). (ECF No. 1 at 1.) Before the Court is Defendant's Motion to Dismiss pursuant to Rules 12(b)(1), 12(b)(2), and 12(b)(6) of the Federal Rules of Civil Procedure, (ECF No. 9.) For the reasons stated below, Defendant's motion will be granted in part and denied in part.

## I.    BACKGROUND

Khan was employed by UNC Health from October 2015 to March 24, 2020. (ECF No. 1 ¶¶ 7, 38.) He was initially hired as a Health Unit Coordinator, (ECF No. 12 at 1), before his promotion to an Administrative Specialist role three years later, (ECF No. 1 ¶ 7). Khan "suffers from non-alcoholic steatohepatitis, ulcerative colitis, splenomegaly, hematuria, and kidney stones." (*Id.* ¶ 8 (footnotes omitted).) As a result, Khan sought intermittent leave

under FMLA, which was approved on or about July 26, 2018 ("First FMLA Plan").  (*Id.* ¶ 9.)
Under the First FMLA Plan, Khan was allowed "leave for 1 to 2 episodes every month, each
episode lasting up to 8 hours," from July 26, 2018, through January 26, 2019.  (*Id.*)
Additionally, on February 13, 2019, Khan's "work schedule permanently changed to 8:30am
to 5:00pm," which Khan alleges was for the purpose of accommodating his disability.  (*Id.*
¶ 12.)  The First FMLA Plan was extended from January 1, 2019, through April 3, 2019, (*Id.*
¶ 10), and then was subsequently extended from April 4, 2019, through July 25, 2019.  (*Id.*
¶ 11.)

The extension from April 4, 2019, through July 25, 2019, ("Second FMLA Plan")
modified the terms of the First FMLA Plan.  (*Id.*)  Under this Second FMLA Plan, Khan was
allowed leave for "2 episodes every week with each episode lasting up to 8 hours," as well as
"leave for one appointment every 3 months and leave for 1 additional appointment every 3
weeks."  (*Id.*)  In July 2019, Khan requested and was approved intermittent leave under FMLA
from July 26, 2019, through January 19, 2020 ("Third FMLA Plan").  (*Id.* ¶ 17.)  The Third
FMLA Plan also provided for a modification of the leave term plans, allowing "leave for 2
episodes a week, lasting up to 8 hours, one appointment every 3 months, and 1-3 additional
appointment[s] each month."  (*Id.*)  While on intermittent FMLA leave, Khan received a verbal
and written warning from UNC Health regarding tardies and attendance issues.  (*Id.* ¶¶ 15,
31.)  Both warnings were subsequently rescinded.  (*Id.* ¶¶ 16, 32.)  Also, during this period of
intermittent FMLA leave, Khan applied for two positions at UNC Health: Administrative
Coordinator for Pediatric Surgery and Administrative Coordinator for General and Acute Care

Surgery. (*Id.* ¶¶ 20, 34.) Khan received an interview for both positions, but ultimately was not awarded either position. (*Id.* ¶¶ 21–22, 34.)

On January 8, 2020, Khan notified UNC Health through email that he (1) would be starting disability paperwork, (2) would "be out of the office until further notice," (3) would "let [UNC Health] know as things progress," and (4) would let UNC Health know when he would "be able to return, based off the recommendation of [his] medical providers." (ECF No. 1-9 at 1.) On January 16, 2020, Khan submitted the documentation to have his FMLA leave recertified. (ECF No. 1 ¶ 25.) The next day, Khan was contacted by UNC Health's Business Manager "regarding recertification for continuous FMLA leave." (*Id.* ¶ 26.) On that same day, Khan contacted UNC Health's Senior Business Partner "requesting to start a formal complaint for FMLA interference and disability discrimination." (*Id.* ¶ 27.) Khan was then approved for continuous FMLA leave from January 20, 2020, through February 11, 2020. (*Id.* ¶¶ 28–29.)

Khan underwent a surgical procedure on March 12, 2020. (*Id.* ¶ 35.) The following day, Khan alleges that UNC Health's Business Manager called him from a non-work phone number regarding his FMLA leave. (*Id.* ¶ 36.) Kahn informed UNC Health on March 16, 2020 that he anticipated that he would be "out until at least June or July, but it could be much longer than that as well." (ECF No. 1-15 at 2.) Khan also requested "not to be contacted during [his] leave, as [he] want[ed] to focus on getting better." (*Id.*) UNC responded notifying Khan that "he was out of FMLA leave and was instead on unapproved leave." (ECF No. 1 ¶ 37.) Khan's employment at UNC Health was terminated on March 24, 2020. (*Id.* ¶ 38.)

Khan alleges that when he was terminated, he still "had remaining FMLA hours that could have been utilized and continued to recoup FMLA hours weekly." (*Id.* ¶ 40.)

Khan filed a discrimination charge with the Equal Employment Opportunity Commission ("EEOC") first on January 31, 2020. (*Id.* ¶ 33.) He then amended his charge on March 25, 2020, to include his termination. (ECF No. 10-2 at 2.) On August 31, 2020, the EEOC issued Khan his Right to Sue Letter, (ECF No. 1 ¶ 39), and Khan subsequently commenced this action on October 29, 2020, (ECF No. 1). UNC Health brings this motion to dismiss pursuant to Rule 12(b)(1) for lack of subject matter jurisdiction, Rule 12(b)(2) for lack of personal jurisdiction, and Rule 12(b)(6) for failure to state a claim upon which relief can be granted. (ECF No. 9.)

## II.     STANDARD OF REVIEW

### A.     12(b)(1)

Under Rule 12(b)(1), a party may seek dismissal based on the court's "lack of subject-matter jurisdiction." Fed. R. Civ. P. 12(b)(1). Subject matter jurisdiction is a threshold issue that relates to the court's power to hear a case and must be decided before a determination on the merits of the case. *Constantine v. Rectors & Visitors of George Mason Univ.*, 411 F.3d 474, 479–80 (4th Cir. 2005). A motion under Rule 12(b)(1) raises the question of "whether [the plaintiff] has a right to be in the district court at all and whether the court has the power to hear and dispose of [the] claim." *Holloway v. Pagan River Dockside Seafood, Inc.*, 669 F.3d 448, 452 (4th Cir. 2012). The burden of proving subject matter jurisdiction rests with the plaintiff, and the trial court may "consider evidence by affidavit, depositions or live testimony without converting the proceeding to one for summary judgment." *Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir.

4

1982).  Furthermore, when evaluating a Rule 12(b)(1) motion to dismiss, the court should grant the motion "only if the material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law." *Richmond, Fredericksburg & Potomac R.R. Co. v. United States*, 945 F.2d 765, 768 (4th Cir. 1991).

## B.    12(b)(6)

A motion to dismiss under Rule 12(b)(6) "challenges the legal sufficiency of a complaint," including whether it meets the pleading standard of Rule 8(a)(2).  *See Francis v. Giacomelli*, 588 F.3d 186, 192 (4th Cir. 2009).  Rule 8(a)(2) requires a complaint to contain "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), thereby "giv[ing] the defendant fair notice of what the . . . claim is and the grounds upon which it rests," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 545 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).  To survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570).  In assessing a claim's plausibility, a court must draw all reasonable inferences in the plaintiff's favor.  *Vitol, S.A. v. Primerose Shipping Co.*, 708 F.3d 527, 539 (4th Cir. 2013).  A claim is plausible when the complaint alleges facts that allow the court "to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Iqbal*, 556 U.S. at 678. However, "mere conclusory and speculative allegations" are insufficient, *Painter's Mill Grille, LLC v. Brown*, 716 F.3d 342, 350 (4th Cir. 2013), and a court "need not accept as true unwarranted inferences, unreasonable conclusions, or arguments," *Vitol*, 708 F.3d at 548 (quoting *Jordan v. Alt. Res. Corp.*, 458 F.3d 332, 338 (4th Cir. 2006)).

5

Generally, on a Rule 12(b)(6) motion to dismiss, a court cannot consider documents beyond the complaint without converting the motion into a motion for summary judgment. *See Occupy Columbia v. Haley*, 738 F.3d 107, 116 (4th Cir. 2013). The court can, however, properly consider "documents attached to the complaint, as well as those attached to the motion to dismiss, so long as they are integral to the complaint and authentic." *Philips v. Pitt Cty. Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009) (citation omitted).

The Court will, therefore, consider certain documents attached to Khan's Complaint and UNC Health's Memorandum of Law in support of its Motion to Dismiss—the authenticity of which have not been challenged by either party.

## III. DISCUSSION

### A. Sovereign Immunity

In support of its motion to dismiss Khan's claims, UNC Health argues that this Court lacks the ability to address Khan's claims because he failed to allege "an abrogation of the sovereign immunity to which UNC Health . . . is otherwise entitled[.]" (ECF No. 10 at 17.)

The Eleventh Amendment provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI. "[T]he doctrine of sovereign immunity under the Eleventh Amendment extends beyond the literal text of the Eleventh Amendment to prevent a state from being sued by one of its own citizens without its consent." *Waste Mgmt. Holdings, Inc. v. Gilmore*, 252 F.3d 316, 329 (4th Cir. 2001). "The ultimate guarantee of the Eleventh

Amendment is that nonconsenting States may not be sued by private individuals in federal court." *Bd. of Trs. of Univ. of Ala. v. Garrett*, 531 U.S. 356, 363 (2001).

Under the well-settled doctrine of sovereign immunity, "a state may not be sued in its own courts or elsewhere unless by statute it has consented to be sued or has otherwise waived its immunity from suit." *Smith v. Hefner*, 68 S.E.2d 783, 787 (N.C. 1952); *see Will v. Mich. Dep't of St. Police*, 491 U.S. 58, 66 (1989). Likewise, an agency of the state may only be sued when it has authorized such suits by statute. *Hefner*, 68 S.E.2d at 787. Statutes constituting such a waiver under North Carolina law "must be strictly construed." *Guthrie v. N.C. St. Ports Auth.*, 299 S.E.2d 618, 627 (N.C. 1983).

The Fourth Circuit has "been unclear on whether a dismissal on Eleventh Amendment immunity grounds is a dismissal for failure to state a claim under Rule 12(b)(6) or a dismissal for lack of subject matter jurisdiction under Rule 12(b)(1)." *Andrews v. Daw*, 201 F.3d 521, 524 n.2 (4th Cir. 2000). Several recent Fourth Circuit opinions, however, have recognized the jurisdictional characteristics of the Eleventh Amendment. *See, e.g., McCray v. Md. Dep't of Transp.*, 741 F.3d 480, 483 (4th Cir. 2014); *Carpenters Pension Fund of Balt. v. Md. Dep't of Health & Mental Hygiene*, 721 F.3d 217, 220, 223 (4th Cir. 2013); *Constantine*, 411 F.3d at 480–81. While Eleventh Amendment immunity contains characteristics of subject matter jurisdiction in that a state may raise immunity at any time, it "is not strictly an issue of subject-matter jurisdiction" because, unlike subject matter jurisdiction, Eleventh Amendment immunity "may be waived by the [s]tate altogether."[1] *Constantine*, 411 F.3d at 481, 482. According to the

---

[1] *See also Ins. Corp. of Ir., Ltd. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 702 (1982) (explaining that "no action of the parties can confer subject-matter jurisdiction upon a federal court" and thus consent, waiver, or estoppel do not apply).

Supreme Court, "[t]he Eleventh Amendment . . . does not automatically destroy original jurisdiction. Rather, [it] grants the State a legal power to assert a sovereign immunity defense should it choose to do so." *Wis. Dep't. of Corrs. v. Schacht*, 524 U.S. 381, 389 (1998).

Though "not a true limit on the subject-matter jurisdiction of the federal courts, the Eleventh Amendment is a block on the exercise of that jurisdiction." *Roach v. W. Va. Reg'l Jail & Corr. Facility Auth.*, 74 F.3d 46, 48 (4th Cir. 1996) (internal quotation omitted); *accord Fent v. Okla. Water Res. Bd.*, 235 F.3d 553, 559 (10th Cir. 2000) (stating that Eleventh Amendment immunity "constitutes a bar to the exercise of federal subject matter jurisdiction"). Once asserted by the state, such immunity becomes a threshold issue that must be resolved before the court can address any of a plaintiff's claims. *See Constantine*, 411 F.3d at 482 ("Given the States' unique dignitary interest in avoiding suit, it is no less important to resolve Eleventh Amendment immunity questions as soon as possible after the State asserts its immunity." (citation and footnote omitted)). In recent years, district courts within the Fourth Circuit have generally considered this immunity defense under Rule 12(b)(1). *See, e.g., Hutto v. S.C. Ret. Sys.*, 899 F. Supp. 2d 457, 466 (D.S.C. 2012); *Beckham v. Nat'l R.R. Passenger Corp.*, 569 F. Supp. 2d 542, 547 (D. Md. 2008). This Court will do the same.

UNC Health acknowledges that it has waived its sovereign immunity in relation to claims by employees under FMLA and the ADA.[2] (*See* ECF No. 10 at 18.) Nevertheless, UNC Health contends that Khan was required to "allege and prove" an abrogation of

---

[2] "UNC [Health] acknowledges that the State Employee Federal Remedy Restoration Act, codified at N.C. Gen. Stat. § 142-300.35, waives sovereign immunity of the State of North Carolina 'for the limited purpose of allowing State employees . . . to maintain lawsuits in State or federal courts' pursuant to the FMLA and the ADA. N.C. Gen. Stat. § 143-300.35(a)."

sovereign immunity for this Court to exercise jurisdiction and resolve his claims. (*Id.* (quoting *Efird v. Riley*, 342 F. Supp. 2d 413, 425 (M.D.N.C. 2004)).) This precise argument has recently been rejected on multiple occasions in this district. *See Brown v. Univ. of N.C. Health Care Sys.*, No. 1:20-CV-0086, 2021 WL 512222, at *3 (M.D.N.C. Feb. 11, 2021); *James v. Univ. of N.C. Health Care Sys.*, No. 1:18-CV-339, 2019 U.S. Dist. LEXIS 237276, at *3 (M.D.N.C. Apr. 15, 2019); *Smith v. Univ. of N.C. Health Care Sys.*, No. 1:20-CV-52, 2021 WL 1146936, at *4 (M.D.N.C. Mar. 25, 2021). Further, UNC Health's argument contradicts the pleading requirements of Rule 8(a)(1), which only requires that a complaint contain "a short and plain statement of the grounds for the court's jurisdiction. . . ." Fed. R. Civ. P. 8(a)(1).

Under the section of his complaint entitled nature of the action, Khan specifically sets forth that this action is brought under three federal statutes: Title VII of the Civil Rights Act of 1964, the American with Disabilities Act of 1990, and the Family Medical Leave Act of 1993. UNC Health has already acknowledged that it has waived sovereign immunity for ADA and FMLA claims brought by its employees. Therefore, Khan's assertion of ADA and FMLA causes of action[3] was sufficient to provide a short and plain statement of the Court's jurisdictional grounds and to notify UNC Health that Khan was alleging an abrogation of sovereign immunity.

---

[3] Although Khan states that "[t]his is an action under the Title VII of the Civil Rights Act of 1964," (ECF No. 1 at 1), Khan asserts no cause of action directly under Title VII. However, even if Khan did assert a cause of action under Title VII, it would not change the Court's analysis, because Congress abrogated a state's Eleventh Amendment immunity when it enacted Title VII. *See Brown*, 2021 WL 512222, at *3 ("Title VII abrogates Eleventh Amendment immunity for suits against a state agency in its capacity as an employer." (citing *Savage v. Md.*, 896 F.3d 260, 275 (4th Cir. 2018))).

9

Accordingly, UNC Health's Motion to Dismiss Khan's claims for failing to allege an abrogation of sovereign immunity is denied.

## B.     ADA Claims

UNC Health next moves to dismiss Khan's disability discrimination and ADA retaliation claim on the basis that his Complaint failed to allege facts that "demonstrate that [Khan] is within the class protected by the ADA." (ECF No. 10 at 19.)  In particular, UNC Health argues that Khan is not a "qualified individual with a disability." (*Id.* at 19.)

### 1.   Disability Discrimination

To establish a prima facie case for disability discrimination, a plaintiff must show that "(1) he 'was a qualified individual with a disability'; (2) he 'was discharged'; (3) he 'was fulfilling h[is] employer's legitimate expectations at the time of discharge'; and (4) 'the circumstances of h[is] discharge raise a reasonable inference of unlawful discrimination.'" *Reynolds v. Am. Nat'l Red Cross*, 701 F.3d 143, 150 (4th Cir. 2012) (quoting *Rohan v. Networks Presentations LLC*, 375 F.3d 266, 273 n.9 (4th Cir. 2004)).

### a.  **Disability under the ADA**

First, UNC Health argues that Khan is not a disabled individual under the ADA, because his "illnesses are intermittent, transitory, and reoccurring." (ECF No. 10 at 24.)  The ADA defines a disability as "a physical or mental impairment that substantially limits one or more major life activities of such individual." 42 U.S.C. § 12102(1)(A).  Under the ADA, a major life activity includes "performing manual tasks," "eating," "sleeping," "concentrating," and the operation of a major bodily function such as "digestive" and "bladder" functions. §

12102(2)(A)–(B).  In addition, "[a]n impairment that is episodic or in remission is a disability if it would substantially limit a major life activity when active."  § 12102(4)(D).

"In September 2008, Congress broadened the definition of 'disability' by enacting the ADA Amendments Act of 2008. . . ."  *Jacobs v. N.C. Admin. Off. of the Cts.*, 780 F.3d 562, 572 (4th Cir. 2015) (citing *Summers v. Altarum Inst., Corp.*, 740 F.3d 325, 329 (4th Cir. 2014)).  The purpose of the ADA Amendments Act ("ADAAA") was to make it "easier for people with disabilities to obtain protection under the ADA."  29 C.F.R. § 1630.1(c)(4) (2019).  The ADAAA states that "[t]he primary object of attention in cases brought under the ADA should be whether covered entities have complied with their obligations and whether discrimination has occurred, not whether the individual meets the definition of disability."  *Id.*  "[T]he question of whether an individual's impairment is a disability under the ADA should not demand extensive analysis."  ADA Amendments Act of 2008, Pub. L. No. 110–325, § 2(b)(5), 122 Stat. 3553, 3554 (2008).  "In enacting the ADAAA, Congress abrogated earlier inconsistent caselaw."  *Jacobs*, 780 F.3d at 572 (citing *Summers*, 740 F.3d at 331).

In his Complaint, Khan states that he "suffers from non-alcoholic steatohepatitis, ulcerative colitis, splenomegaly, hematuria, and kidney stones."  (ECF No. 1 ¶ 8 (footnotes omitted).)  Khan further alleges that "[t]hese impairments directly affect [his] digestive system and bladder, and affect his ability to perform manual tasks, eat, sleep, or concentrate as he becomes debilitated due to continuous vomiting."  (*Id.* ¶ 67.)  Thus, Khan has alleged conditions that substantially limit major life activities.  Accordingly, Khan has alleged facts sufficient to establish that he is disabled under the ADA.

### b. **Qualified Individual under the ADA**

Next, UNC Health argues that under the ADA, Khan is not a qualified individual because of his absences from work and his "intent to remain indefinitely absent at the time of his termination." (ECF No. 10 at 20.) The ADA only permits qualified individuals for the job to state a discrimination claim. *Tyndall v. Nat'l Educ. Ctrs., Inc. of Cal.*, 31 F.3d 209, 212 (4th Cir. 1994). Under § 12111(8) of the ADA, a qualified individual is "an individual who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8). A function is essential to the position when "'the reason the position exists is to perform that function,' when there aren't enough employees available to perform the function, or when the function is so specialized that someone is hired specifically because of his or her expertise in performing that function." *Jacobs*, 780 F.3d at 579 (citing 29 C.F.R. § 1630.2(n)(2)).

In his Complaint, Khan has not specifically articulated the essential functions of his job. However, Khan has alleged facts from which the Court can reasonably infer that attendance is an essential function of his job, including that he (1) applied for and received leave under FMLA, and UNC Health provided him with additional leave, (ECF No. 1 ¶¶ 9–11, 17); (2) had a list of approved and denied absences and received a verbal warning regarding tardies, (*Id.* ¶¶ 13–15); (3) had to request and receive approval for time off, (*Id.* ¶ 18); (4) received a written warning for attendance issues, (*Id.* ¶ 31); (5) was informed on March 17, 2020, that he was on unapproved leave, (*Id.* ¶ 37); and (6) was terminated for allegedly being on unapproved leave, (*Id.* ¶¶ 40, 60).

"An employee who does not come to work cannot perform *any* of his job functions, essential or otherwise." *Tyndall*, 31 F.3d at 213 (internal quotation omitted). An essential job function includes a regular and reliable level of attendance. *Halperin v. Abacus Tech. Corp.*, 128 F.3d 191, 197 (4th Cir. 1997); *Lamb v. Qualex, Inc.*, 33 Fed. App'x 49, 56 (4th Cir. 2002). "An employee who cannot meet the attendance requirements of the job at issue cannot be considered a 'qualified' individual protected by the ADA." *Tyndall*, 31 F.3d at 213. Here, the parties do not dispute that Khan was not attending work and that a significant portion of his absences was leave taken pursuant to FMLA. The parties do contest whether Khan's leave taken pursuant to FMLA may count against him in the determination of whether he can perform the essential job function of attendance.

The ADA and the FMLA should be read separately and independently. *Payne v. Fairfax Cty.*, No. 1:05CV1446 2006 WL 3196545, at *9 (E.D. Va. Nov. 1, 2006) ("Nothing in the FMLA modifies or affects any Federal or State law prohibiting discrimination on the basis of . . . disability. FMLA's legislative history explains that FMLA is not intended to modify or affect the . . . American with Disabilities Act of 1990, or the regulations issued under the act." (quoting 29 C.F.R. § 825.702)). The purposes of the ADA and the FMLA are described as the following:

> The rights Congress created under the FMLA are fundamentally different than those granted under the ADA. One of Congress's purposes in enacting the ADA involved eliminating the discrimination qualified individuals with disabilities face in their day to day lives. 42 U.S.C. § 12101. In contrast, the FMLA was created, in part, because of "inadequate job security for employees who have serious health conditions that prevent them from working for temporary periods." 29 U.S.C. § 2601(a)(4). While the ADA's protection is almost perpetual, lasting as long as the employee continues to meet the statutory criteria, the FMLA grants eligible employees 12 weeks of leave to deal with a specified family situation or medical condition. 29 U.S.C. § 2612.

Furthermore, the ADA does not protect an employee unable to perform "the essential functions of the employment position that such individual holds." In contrast, the FMLA was designed to protect the employee who is "unable to perform the functions of the position of the employee" from losing her position during the leave period. *See* 29 C.F.R. § 825.115. Essentially, the leave time under the FMLA structure is an opportunity for the employee to treat or attend to the condition rendering her unable to perform her job. Hence, the determination that [an employee] was not qualified at the time to perform the essential functions of her position with the [employer] under the ADA will not automatically bar her claim under the FMLA.

*Spangler v. Fed. Home Loan Bank of Des Moines*, 278 F.3d 847, 851 (8th Cir. 2002). In accordance with the purposes of the ADA and FMLA, this Court will read the two statutes separately and independently. Therefore, if FMLA leave prohibits an employee from performing the essential function of attendance, then the employee is not a qualified individual under the ADA. However, an employee that "experiences adverse employment actions for utilizing FMLA leave is not without recourse" and may seek redress under the FMLA. *Payne*, 2006 WL 3196545, at *9.

Construing the facts in the light most favorable to Khan, attendance was an essential function of Khan's job, and he was consistently absent due to FMLA, including continuously for 64 days until the day of his termination with no end in sight. Due to these absences, Khan was unable to perform the essential functions of his job. Therefore, Khan has not alleged sufficient facts that he is a qualified individual under the ADA and is unable to satisfy the first element of his disability discrimination claim.

Accordingly, UNC Health's Motion to Dismiss is granted as to Khan's disability discrimination claim under the ADA.

2. <u>ADA Retaliation</u>

However, despite this Court's ruling that Khan cannot proceed with his disability discrimination claim under the ADA, UNC Health's contention that Khan should not be allowed to proceed with his ADA retaliation claim because he is not a qualified individual with a disability lacks merit.

Retaliation under the ADA is prohibited by § 12203(a) which provides that "[n]o person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by this chapter or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this chapter." 42 U.S.C. § 12203(a). For an ADA retaliation claim, "[a] plaintiff need not show that she is disabled within the meaning of the ADA." *Jacobs*, 780 F.3d at 577 (citing *Rhoads v. F.D.I.C.*, 257 F.3d 373, 391 (4th Cir. 2001)); *see Colon-Fontanez v. Mun. of San Juan*, 671 F. Supp. 2d 300, 331 (D.P.R. 2009) ("A plaintiff may assert a claim for retaliation, even where the underlying claim for disability discrimination fails."), *aff'd*, 660 F.3d 17 (1st Cir. 2011); *see also Krouse v. Am. Sterilizer Co.*, 126 F.3d 494, 502 (3d Cir. 1997) ("Unlike a plaintiff in an ADA *discrimination* case, a plaintiff in an ADA *retaliation* case need not establish that he is a 'qualified individual with a disability.' By its own terms, the ADA retaliation provision protects 'any individual' who has opposed any act or practice made unlawful by the ADA or who has made a charge under the ADA." (quoting § 12203(a))).

To establish a prima facie case of ADA retaliation under the burden-shifting framework of *McDonnell Douglas Corp. v. Green*, a plaintiff must show: "(1) he engaged in protected activity, (2) his employer took adverse action against him, and (3) a causal

15

relationship existed between the protected activity and the adverse employment action." *Thomas v. City of Annapolis, Md.*, 851 F. App'x 341, 350 (4th Cir. 2021); *see McDonnel Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). A plaintiff engages in a protected activity when he files an EEOC charge. *Id.* An adverse employment action occurs when an employer terminates an employee. *King v. Rumsfeld*, 328 F.3d 145, 151 (4th Cir. 2003). Moreover, a plaintiff may establish a causal relationship "by showing that (1) the employer either understood or should have understood the employee to be engaged in protected activity and (2) the employer took adverse action against the employee soon after becoming aware of such activity." *Strothers v. City of Laurel*, 895 F.3d 317, 336 (4th Cir. 2018). The Fourth Circuit has held that "four months between the protected activity and adverse employment action is sufficient to establish a causal connection at the prima facie stage." *Thomas*, 851 F. App'x at 350 (citing *Carter v. Ball*, 33 F.3d 450, 460 (4th Cir. 1994)).

Here, Khan has sufficiently alleged facts to establish a prima facie case of ADA retaliation. First, Khan states that he engaged in a protected activity by filing an EEOC complaint on January 31, 2020. (ECF No. 1 ¶¶ 33, 75.) Next, Khan alleges that UNC Health "was aware of [his] EEOC complaint, as they were notified via email by [him]." (*Id.* ¶ 76.) Finally, Khan claims that UNC Health took an adverse employment action when they terminated him approximately two months later "on March 24, 2020, during the EEOC's investigation, roughly two weeks before Defendant filed a 42-page rebuttal to his claim." (*Id.* ¶ 77.) Thus, accepting Khan's allegations as true, Khan has sufficiently alleged a claim for ADA retaliation.

Accordingly, UNC Health's Motion to Dismiss Khan's ADA retaliation claim is denied.

## C.     FMLA Interference Claim

UNC Health also moves to dismiss Khan's FMLA interference claim, arguing that Khan's allegations are "insufficient to state a claim that UNC [Health] interfered with Khan's FMLA rights." (ECF No. 10 at 27.)  Specifically, UNC Health contends that Khan was not prejudiced by the phone call or discipline, and that Khan was not entitled to FMLA benefits when he was terminated. (*Id.* at 28.)

Under the FMLA, eligible employees are entitled to a total of twelve workweeks of leave during any twelve-month period due to "a serious health condition that makes the employee unable to perform the functions of [his] position." 29 U.S.C. § 2612(a)(1)(D).  The FMLA provides, in part, that "[i]t shall be unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right" under the FMLA.  § 2615(a)(1). An employer interferes with a right under the FMLA when it takes any "action with a reasonable tendency to 'interfere with, restrain, or deny' the 'exercise of or attempt to exercise' an FMLA right . . . even where the action fails to actually prevent such exercise or attempt." *Gordon v. U.S. Capitol Police*, 778 F.3d 158, 165 (D.C. Cir. 2015) (quoting 29 U.S.C. § 2615(a)(1)). "To make out an 'interference' claim under the FMLA, an employee must . . . demonstrate that (1) he is entitled to an FMLA benefit; (2) his employer interfered with the provision of that benefit; and (3) that [the] interference caused harm." *Adams v. Anne Arundel Cty. Pub. Sch.*, 789 F.3d 422, 427 (4th Cir. 2015).  At the motion to dismiss stage, however, a plaintiff need only allege facts that permit the court to plausibly infer that his employer interfered with his FMLA rights. *See Snipes v. Sw. Va. Reg'l Jail Auth.*, 350 F. Supp. 3d 489, 494 (W.D. Va. 2018).

17

However, under the FMLA, there is no relief for an interference claim "unless the employee has been prejudiced by the violation." *Vannoy v. Fed. Rsrv. Bank of Richmond*, 827 F.3d 296, 302 (4th Cir. 2016) (citing *Ragsdale v. Wolverine World Wide, Inc.*, 535 U.S. 81, 89 (2002)). "Prejudice exists where an employee loses compensation or benefits by reason of the violation, sustains other monetary losses as a direct result of the violation, or suffers some loss in employment status remediable through appropriate equitable relief." *Alexander v. Carolina Fire Control Inc.*, 112 F. Supp. 3d 340, 347 (M.D.N.C. 2015) (quoting *Reed v. Buckeye Fire Equip.*, 241 F. App'x. 917, 924 (4th Cir. 2007).

UNC Health moves to dismiss Khan's FMLA interference claim, arguing that Khan did not suffer prejudice from the phone call or discipline, and that Khan—at the time of his termination—was not entitled to FMLA benefits. To make this argument, UNC Health is dividing the FMLA interference allegations in Khan's Complaint into three different occurrences of interference. Khan, on the other hand, argues that these allegations should be read together as continuous events that built upon each other and ultimately led to his termination. (*See* ECF No. 12 at 10-11.)

Accepting the allegations in Khan's Complaint as true, the Court does not read the allegations for Khan's FMLA interference claim as three different instances of interference; rather, the Court views these allegations as continuous events that ultimately led to his termination. UNC Health does not dispute that Khan was prejudiced by being terminated; rather, they argue that he was not entitled to FMLA benefits at the time of his termination. However, construing the facts in Khan's Complaint as true, which the Court must do at this stage of the proceedings, Khan has alleged that he was still on approved FMLA leave when

terminated. Thus, Khan has alleged sufficient facts to plausibly allege a claim for FMLA interference.

Accordingly, UNC Health's Motion to Dismiss is denied as to Khan's FMLA interference claim.

### D. FMLA Retaliation Claim

UNC Health finally moves to dismiss Khan's FMLA retaliation claim on the basis that the allegations in his Complaint "are insufficient to state a claim that UNC [Health] retaliated against Khan for his exercise of FMLA rights." (ECF No. 10 at 32.)

Khan brought his FMLA retaliation claim under Section 2615(a)(2) of the FMLA, which forbids employers from "discharg[ing] or in any other manner discriminat[ing] against any individual for opposing any practice made unlawful" by the FMLA. 29 U.S.C. § 2615(a)(2). To state a FMLA retaliation claim capable of surviving a motion to dismiss, a plaintiff must allege facts sufficient to permit the court to plausibly infer that: (1) he "engaged in a protected activity"; (2) his employer "took adverse action against him"; and (3) "the adverse action was causally connected to [his] protected activity." *See Yashenko v. Harrah's NC Casino Co., LLC*, 446 F.3d 541, 551 (4th Cir. 2006); *Snipes*, 350 F. Supp. 3d at 494. "The Fourth Circuit has held that taking FMLA leave is a protected activity under the FMLA and recognizes a cause of action for retaliation where an employee alleges that he was discharged for taking FMLA leave." *Moss v. City of Abbeville*, 740 F. Supp. 2d 738, 744 (D.S.C. 2010).

Here, Khan has alleged in his Complaint that he took FMLA leave with UNC Health's approval and that he was terminated while "on FMLA leave, for leave related absences." (ECF No. 1 ¶ 60.) Khan further alleges that he was not selected for job positions within UNC

Health due to his FMLA status. (*Id.* ¶ 61.) Khan's allegations therefore clearly satisfy the first two elements of a retaliation claim.

UNC Health contests the third element, arguing that Khan "has failed to adequately allege a causal connection between adverse actions and his taking of FMLA leave." (ECF No. 10 at 35.) The Court disagrees. A plaintiff may satisfy the third element of her retaliation claim by alleging a sufficiently close temporal proximity between the adverse employment action she suffers and the protected activity she engages in. *Yashenko*, 446 F.3d at 551 ("While evidence as to the closeness in time 'far from conclusively establishes the requisite causal connection, it certainly satisfies the less onerous burden of making a prima facie case of causality.'" (quoting *Williams v. Cerberonics, Inc.*, 871 F.2d 452, 457 (4th Cir. 1989))). Khan alleges that he was on FMLA leave when he was terminated. (ECF No. 1 ¶ 60.) In addition, Khan contends that he was subject to non-selection during the period which he was exercising his intermittent FMLA leave. (*See Id.* ¶¶ 20–22, 34, 61.) Viewing these factual allegations in the light most favorable to Khan, the Court reasonably infers that Khan was terminated and not selected for job positions at UNC Health while exercising his FMLA leave. Thus, the close temporal proximity Khan has alleged is sufficient to plausibly infer a causal connection between his FMLA leave and both his termination and non-selection for job positions at UNC Health. Therefore, the Court concludes that Khan has alleged sufficient facts in his Complaint to support a plausible claim that UNC Health terminated him in retaliation for him exercising FMLA rights.

Accordingly, UNC Health's Motion to Dismiss is thus denied as to Khan's FMLA retaliation claim.

## IV. CONCLUSION

Review of the allegations in Khan's Complaint, taken in the light most favorable to Khan and resolving all inferences in his favor, leads the Court to conclude that Khan has made sufficient allegations to plausibly allege a claim of ADA retaliation, FMLA interference, and FMLA retaliation. However, the allegations in Khan's Complaint were insufficient to plausibly allege a claim of disability discrimination under the ADA.

For the reasons stated herein, the Court enters the following:

**ORDER**

**IT IS THEREFORE ORDERED** that Defendant's Motion to Dismiss, (ECF No. 9), is **GRANTED** in part and **DENIED** in part. The motion is granted with respect to Plaintiff's claim for disability discrimination under the ADA and that claim is **DISMISSED**. Defendant's Motion is **DENIED** as to all remaining claims to include Plaintiff's ADA Retaliation Claim, FMLA Retaliation Claim, and FMLA Interference Claim.

This the 24th day of September 2021.

/s/ Loretta C. Biggs
United States District Judge

21